**15SL-CC01584**

Electronically Filed - St Louis County - May 07, 2015 - 01:50 PM

IN THE CIRCUIT COURT
TWENTY-FIRST JUDICIAL CIRCUIT
(ST. LOUIS COUNTY)

| | |
|---|---|
| RICKEY COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No.: |
| ) | |
| CITY OF PINE LAWN, ) | |
| ) | **Plaintiff Demands Trial by Jury** |
| Defendant. ) | |
| ) | |
| **SERVE:** ) | |
| **Victoria Stevenson** ) | |
| **Pine Lawn City Hall** ) | |
| **6250 Steve Marre Avenue** ) | |
| **St. Louis, MO 63121** ) | |

## PETITION

## COUNT I

NOW COMES Plaintiff, Rickey Collins (hereafter referred to as "Collins"), by and through his undersigned attorneys, Michael Brunton and Brunton Law Offices, P.C., and for Count I of his Complaint against Defendant, City of Pine Lawn (hereafter referred to as "Pine Lawn"), states:

### I. Initial Employment.

1. Collins was employed by Pine Lawn as a police officer.

2. On May 21, 2006, Collins was promoted from Lieutenant to the rank of Captain of the Pine Lawn Police Department by Mayor Sylvester Caldwell and the Board of Alderman.

3. In May of 2007, Collins was promoted to the Chief of Pine Lawn's Police Department by Mayor Sylvester Caldwell and the Board of Alderman.

4. Collins was promoted throughout his employment with Pine Lawn and he eventually obtained the rank of Chief of Police, in charge of Pine Lawn police day-to-day operations.

## II. Cooperation with the FBI in their investigation involving government officials working for Pine Lawn.

5. While Collins was the Chief of Police of the Pine Lawn Police Department, Collins informed the Federal Bureau of Investigation ("FBI") about illegal activities by government officials working for Pine Lawn.

6. From that date Collins supplied pertinent information to the FBI regarding corruption by officials working for Pine Lawn.

7. Collins' information provided to the FBI included, but was not limited to, the following:

   a. Collins provided information possibly leading to the identification of key witnesses in an alleged extortion scheme involving the Mayor of Pine Lawn, Sylvester Caldwell (hereafter referred to as "The Mayor").

   b. The Mayor had people summoned to court by police officers after he observed some alleged violation that they committed. Many of these people were consistently the same individuals and he referenced them as the "bitter bunch". Many of the people were believed to be past political adversaries or citizens that publically criticized him. The Mayor frequently called for the arrest and summons of citizens.

   c. The Mayor ordered video and still footage of political adversaries who were arrested, by an outside person. The Mayor used the photos in a later campaign ad with the "Pine Lawn Evening World". The Ad/Article in the paper discredited past and future political candidates pictured in various states of arrest. Some were leg shackled for the photos.

   d. The Mayor asked for an arrest warrant to arrest the opposing candidate on a minor offense that would normally require only a ticket. Media outlets were then contacted advising them of the arrest of The Mayor's adversary.

e. The Mayor, on several occasions, had on duty police officers stationed overnight in their squad cars to watch his D.J. equipment when he left it in the city community center. The officers were stationed at both entrances to make sure that his personal equipment was not stolen during a burglary.

f. The Mayor had police officers act as personal security outside of the Pine Lawn jurisdiction while on duty, while he was working at private events (non-city business).

g The Mayor used a city public works van to transport his personal D.J. equipment to events.

h. The Mayor visited various markets and shops located in Pine Lawn. The Mayor removed items but did not pay for them stating that they would be added to his tab.

i. The Mayor asked Collins to buy The Mayor's lunch or dinner on pay day on many occasions and pay for the Mayor's purchases when requested.

j. The Mayor had ordered other officers to stop and frisk for positive confirmation of their identity if they were within a certain range of his house in Pine Lawn. Collins reported this to The Mayor as unlawful stops but it never ceased.

k. The Mayor ordered vehicles towed under any circumstances of arrest, even if the vehicle was safely and legally parked and the arrested owners consented to leaving the car parked on the street. The Mayor evaluated police officers performance based on the number of vehicles they towed during their shift.

l. The Mayor ordered Collins to keep records on the amount of tickets each officer issued. The mayor would request termination of any officer not writing his quota.

m. There were Pine Lawn employees called the "neighborhood watch" whose job was to only watch The Mayor's house 24 hours per day but were on the city payroll. They often used unmarked police cars to patrol the Mayor's neighborhood.

n. The Mayor frequently referred to the police department as his "private army" and "his" police department.

o. The Mayor used unmarked police vehicles for his own personal use at Pine Lawn's expense. He alternated between four vehicles to cover up the mileage usage.

p. Collins also informed the FBI regarding numerous retaliation actions harassment and intimidation after Pine Lawn learned about Collins' actions as a witness of the corruption.

q. The Mayor inflated Pine Lawn checks to obtain kickbacks of some of the funds.

r. The Mayor requested money from local businesses to be used for city events, but never turning the money over to the City Administrators.

s. Collins wore a wire.

t. The Mayor was continuing to interfere with Collins running the Police Department to the point where the Mayor had the officers reporting to him, and he would then tell Collins what information he decided Collins needed to know.

u. Mayor Caldwell revoked Collins budgeting duties for the Police Department's finances. All financial matters were to be handled by the Mayor, and the Mayor would notify Collins of what he approved or denied, if the Mayor decided Collins needed to know.

v. Collins only was allowed to discipline officers with the Mayor's approval, or officers that the Mayor wanted Collins to discipline.

w. The Mayor was often heard over the police radio identifying himself as "Charles 99". Often times Collins responded to dispatched calls and upon arrival noted that the Mayor was actively involved in police activity in unauthorized areas.

### III. Reports of illegal activity to Pine Lawn and hostile work environment resulting from multiple reports.

8. Collins also reported the Mayor's illegal activities to elected officials.

9. Collins also reported the Mayor as interfering with the Police Department by firing officers without cause.

10. The Pine Lawn officials were informed that Collins would be reporting the Mayor to the authorities.

11. The reports of illegal activity resulted in a hostile work environment for Collins.

12. Collins communicated with Donnell Smith, the city attorney, asking that the hostile work environment cease, and asked that certain administrators who were acting maliciously towards Collins stop these actions. Collins received no response from Donnell Smith. Although no one was identified in the letter, the City Manager responded stating if Collins "wants to talk about my veiled accusation directed at him, the ball was in his court".

13. Collins again communicated with representatives of Pine Lawn advising them of improper procedures and obvious hostile tactics created to terminate Collins, without cause in front of the board.

14. Collins told Donnell Smith, the City Attorney, and Brian Krueger, the City Manager, about the Mayor's illegal activities but they said there was nothing they could do. They were told that Collins was reporting the Mayor to the authorities.

15. Collins was offered six months' severance pay to quit the police department if he signed a release of his rights to seek further action against Pine Lawn. Collins rejected the Pine Lawn offer.

16. The City Manager posted signs around the police station that stated Collins was not allowed in the building or on City property.

17. A board meeting was held to discuss Collins' employment. Prior to the meeting, Collins had not received any response to objections to violations of the Missouri Sunshine Law. Collins never received anything in writing letting him know what he had allegedly done wrong. Collins did not know anything about the meeting other than he was verbally told it was about his employment.

18. Collins' report of criminal violations to third party government authorities and his supervisors was a contributing factor in his retaliatory wrongful termination.

19. Pine Lawn has procured liability insurance that would provide coverage for retaliatory discharge claims brought against them.

20. As a result of Pine Lawn's retaliatory discharge of Collins, he is entitled to his past and future lost earnings and benefits.

21. As a result of Pine Lawn's retaliatory discharge of Collins, he was caused to suffer severe emotional distress which will continue into the future.

22. Collins is also entitled to punitive damages, attorney fees and costs as a result of Pine Lawn's actions.

WHEREFORE, Plaintiff, Rickey Collins, requests that judgment be entered in his favor and against defendant, City of Pine Lawn, in an amount **in excess of $25,000.00** and award costs of suit.

**Plaintiff Demands Trial by Jury.**

## COUNT II

NOW COMES Plaintiff, Rickey Collins (hereafter referred to as "Collins"), by and through his undersigned attorneys, Michael Brunton and Brunton Law Offices, P.C., and for Count II of his Complaint against Defendant, City of Pine Lawn (hereafter referred to as "Pine Lawn"), states:

1-22.   For paragraphs one (1) through eleven (11), Collins realleges and incorporates Paragraphs one (1) through eleven (11) of Count I as though fully alleged herein.

23.   Collins was exercising his constitutional right of free speech as provided by the State of Missouri, and as such, was performing acts that sound public policy would encourage, and this was a contributing factor in his retaliatory wrongful termination.

24.   Pine Lawn has procured liability insurance that would provide coverage for retaliatory discharge claims brought against them.

25.   As a result of Pine Lawn's retaliatory discharge of Collins, he is entitled to his past and future lost earnings and benefits.

26.   As a result of Pine Lawn's retaliatory discharge of Collins, he was caused to suffer severe emotional distress which will continue into the future.

27.   Collins is also entitled to punitive damages, attorney fees and costs as a result of Pine Lawn's actions.

WHEREFORE, Plaintiff, Rickey Collins, requests that judgment be entered in his favor and against defendant, City of Pine Lawn, in an amount **in excess of $25,000.00** and award costs of suit.

**Plaintiff Demands Trial by Jury.**

## COUNT III

NOW COMES Plaintiff, Rickey Collins (hereafter referred to as "Collins"), by and through his undersigned attorneys, Michael Brunton and Brunton Law Offices, P.C., and for Count III of his Complaint against Defendant, City of Pine Lawn (hereafter referred to as "Pine Lawn"), states:

1-22. For paragraphs one (1) through eleven (11), Collins realleges and incorporates Paragraphs one (1) through eleven (11) of Count I as though fully alleged herein.

23. Collins' actions were in accordance with public policy and he was performing a civic duty by acting as a witness in a government investigation and this was a contributing factor in his retaliatory wrongful termination.

24. Pine Lawn has procured liability insurance that would provide coverage for retaliatory discharge claims brought against them.

25. As a result of Pine Lawn's retaliatory discharge of Collins, he is entitled to his past and future lost earnings and benefits.

26. As a result of Pine Lawn's retaliatory discharge of Collins, he was caused to suffer severe emotional distress which will continue into the future.

27. Collins is also entitled to punitive damages, attorney fees and costs as a result of Pine Lawn's actions.

WHEREFORE, Plaintiff, Rickey Collins, requests that judgment be entered in his favor and against defendant, City of Pine Lawn, in an amount **in excess of $25,000.00** and award costs of suit.

**Plaintiff Demands Trial by Jury.**

                                              BRUNTON LAW OFFICE, P.C.

                                              */s/ Michael J. Brunton*

Michael J. Brunton, #42877
Mary M. Stewart, #38594
819 Vandalia (HWY 159)
Collinsville, IL 62234
(618) 343-0750
(618) 343-0227 Facsimile
*Attorney for Plaintiff*

Electronically Filed - St Louis County - May 07, 2015 - 01:50 PM