UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICKEY COLLINS,                          )
                                         )
          Plaintiff,                     )
                                         )        Case No. 4:15CV01231 AGF
                                         )
     v.                                  )
                                         )
CITY OF PINE LAWN, MISSOURI, et al.,     )
                                         )
          Defendants.                    )

**MEMORANDUM AND ORDER**

This action was removed from state court, and is before the Court on the motion (Doc. No. 71) of Defendant Donnell Smith ("Smith") to dismiss the claims of Plaintiff Rickey Collins asserted against him in the Second Amended Complaint (the "Complaint") for failure to state a claim upon which relief can be granted. Plaintiff asserts three claims against Smith: (1) violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) a state law claim of intentional interference with a business relationship; and (3) a claim under 42 U.S.C. § 1983 for violation of his constitutional rights under the First and Fourteenth Amendments. For the reasons set forth below, the motion to dismiss will be granted.

**BACKGROUND**

Currently before the Court is Plaintiff's third iteration of the complaint. Plaintiff amended his initial complaint twice, each time after one or more Defendants filed

motions to dismiss or for summary judgment. At issue in the current motion are the claims in the Complaint. (Doc. No. 64.)

Plaintiff is the former Chief of Police for the City of Pine Lawn ("Pine Lawn"). He had served in that capacity since May 2007. Defendant Pine Lawn is a municipality in the state of Missouri, and was Plaintiff's employer. Defendant Sylvester Caldwell ("Caldwell") is the former mayor of Pine Lawn, and Smith was the City Attorney for Pine Lawn. Each of the individual Defendants is sued in his individual capacity.

In his current Complaint, Plaintiff alleges that as Chief of Police of Pine Lawn's police department, he learned about illegal activities conducted by Caldwell, and informed the Federal Bureau of Investigation ("FBI"). Thereafter, Plaintiff supplied information about these activities to the FBI on multiple occasions. Among other allegations, Plaintiff claims the information he provided to the FBI may have led to the identification of witnesses in an extortion scheme involving Caldwell. Plaintiff alleges that Caldwell engaged in numerous improper or illegal acts involving the Pine Lawn police department including that he used the Pine Lawn police department to summon political adversaries or critics to court.

Plaintiff alleges he also reported Caldwell's activities to elected officials, and reported that Caldwell had fired Pine Lawn police officers without cause. Plaintiff claims that his reporting Caldwell's illegal activities resulted in a hostile work environment. Plaintiff also alleges that he communicated with Smith and Pine Lawn's City

Administrator, Brian Krueger,[1] and asked that the hostile work environment stop, and

that the malicious actions by certain administrators against him also cease. Plaintiff

claims that he received no response from Smith, and that the hostile work environment

continued. He further alleges that he advised Smith and Krueger of Caldwell's illegal

activities, but that they said there was nothing they could do.

With respect to his termination, Plaintiff claims that the Board of Aldermen for

Pine Lawn suspended (and later terminated) him without an adequate, legal hearing in a

meeting that was not held in compliance with the Missouri Sunshine Law, Mo. Rev. Stat.

§ 610.011, *et. seq.* He claims that Pine Lawn did not post a notice of the meeting 24

hours in advance, the notice did not contain sufficient details of the meeting's agenda,

and the notice was not posted in a conspicuous location. Plaintiff alleges he informed the

Board of Aldermen of the impropriety of the meeting, but they proceeded. Plaintiff

further alleges that the various Defendants engaged in a pattern of racketeering activity,

that included an attempt to obstruct justice and tamper with witnesses after the mayor was

indicted,[2] and that these actions caused Plaintiff to be terminated from his employment.

## ARGUMENTS OF THE PARTIES

In Count XV, Plaintiff alleges that Smith violated RICO, 18 U.S.C. § 1961, et seq.

Plaintiff asserts that Smith "was part of the organization involved in RICO and was

---

[1]    Krueger was named as a Defendant in this action, but on February 16, 2017, the
Court granted Plaintiff's and Krueger's Stipulation of Dismissal of Krueger without
prejudice.

[2]    The Court takes judicial notice that on August 13, 2014, Caldwell was indicted for
Hobbs Act extortion. A jury found him guilty, and on July 6, 2015, he was sentenced to
33 months of imprisonment. (Case No. 4:14-CR-00248-CDP.)

involved in the obstruction of a witness and informant and tampering with evidence." (Doc. No. 64 at 28.)  Plaintiff further claims that these actions affected his employment with Pine Lawn and "caused [Plaintiff] to be terminated from his employment."  *Id.* Plaintiff also asserts that there is insurance coverage for this claim.

In his motion to dismiss Count XV, Smith argues that Plaintiff lacks standing to bring a claim under RICO.  More specifically, Smith contends that Plaintiff "has failed to plead any predicate for finding that his loss of wages or emotional distress constitute a damage 'to business or property' under RICO."  (Doc. No. 23 at 2.)[3]  Smith further argues that Plaintiff has failed to plead the causation element of a RICO claim.  To that end, Smith contends that Plaintiff's allegations in his Complaint are conclusory, and are not entitled to "an assumption of truth" in the context of a motion to dismiss.  *Id.* at 3.

In response, Plaintiff states that the racketeering activities themselves caused his injury.  Plaintiff further argues that the instant motion to dismiss fails to address allegations of other statutory violations by Smith, such as the violation of the Victims and Witness Protection Act, contained in paragraphs 46 through 50, which are part of Count XII of the Complaint, incorporated into Count XV by reference.  (Doc. No. 84.)  In reply, Smith reiterates his argument that Plaintiff lacks standing.   (Doc. No. 87 at 2.)

In Count XVI, Plaintiff brings a claim of tortious interference with a contract or business expectancy, claiming that "Smith, in his individual and unofficial capacity, intentionally and wrongfully interfered with Plaintiff's economic relationship and

---

[3]     Smith, in his memorandum in support of his motion to dismiss, adopts the arguments previously submitted in Defendant Pine Lawn's motion to dismiss and supporting memoranda.  (Doc. No. 72 at 1.)  *See* Doc. Nos. 22, 23 & 38.

expectancy of continued employment, without justification or excuse, which he had through his employment with City of Pine Lawn Police Department by causing Plaintiff to be wrongfully terminated."  (Doc. No. 64 at 29.)

Smith moves to dismiss Count XVI, claiming that as an official of Pine Lawn, he is indistinct from the city, and cannot therefore tortiously interfere with Plaintiff's relationship with the city.  Smith further claims that the complaint contains no allegations that Smith "induced or caused" any breach of a contractual relationship.  (Doc. No. 72 at 2.)  In response, Plaintiff asserts that a co-employee can be liable for tortious inference if he acts in his own self-interest and outside the scope of his employment.  Moreover, Plaintiff states that the complaint is sufficient under Federal Rule of Civil Procedure 8. In reply, Smith argues that the authority cited by Plaintiff in his opposition brief does not defeat the requirement that a tortious interference claim be brought by a third party.

In Count XIX, Plaintiff brings various claims against Smith under 42 U.S.C. § 1983, alleging violations of Plaintiff's constitutional rights under the First and Fourteenth Amendments.  Plaintiff alleges he was exercising his right to free speech when he talked to the FBI and the press, and that the resulting termination was retaliatory and a violation of his rights under the First and Fourteenth Amendments.  Plaintiff also claims that he was exercising his freedom of association in carrying out these actions, as provided by the First and Fourteenth Amendments.  He further asserts that, since he had an expectancy of continued employment and had a liberty and/or property interest in the same, Smith violated Plaintiff's due process rights under the Fourteenth Amendment when Plaintiff was terminated without process or notice.  Finally, Plaintiff asserts that

Smith violated his rights to equal protection under the Fourteenth Amendment, as his termination damaged his reputation and ability to obtain future employment.

Smith moves to dismiss Count XIX, claiming that he is shielded from liability on Plaintiff's claims, under the doctrine of qualified immunity. More specifically, Smith asserts that Plaintiff has not pleaded the deprivation of a protected right, and offers the following arguments in support. First, Plaintiff has not pleaded a retaliation claim under the First Amendment, as he has not alleged Smith terminated his employment or had the authority to do so. Second, Plaintiff has not pleaded a due process claim under the Fourteenth Amendment because he has no property interest in future employment. Third, Plaintiff has not pleaded an equal protection claim under the Fourteenth Amendment because the allegations in the complaint were conclusory.

In response, Plaintiff contends that the entire complaint is sufficient under the federal pleading standards set forth in Federal Rule of Civil Procedure 8. Plaintiff further contends that "the ultimate issue turns on whether the alleged infringement is fairly attributable to the state (or governmental entity)." (Doc. No. 84 at 10.) Plaintiff also states that Smith was a willing participant in the actions leading to the denial of Plaintiff's constitutional rights. In reply, Smith argues that Plaintiff's response "detours into an inapposite discussion on Rule 8 and capacity" and "fails to address Smith's qualified immunity[] and . . . various other failings of the Complaint to invoke relief for a denial of any constitutional right." (Doc. No. 87 at 6.)

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.*; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

## COUNT XV—RICO

The elements of a civil RICO claim are:

(1) that an enterprise existed; (2) that the enterprise affected interstate or foreign commerce; (3) that the defendant associated with the enterprise; (4) that the defendant participated, directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendant participated in the enterprise through a pattern of racketeering activity by committing at least two racketeering (predicate) acts.

*Aguilar, et al., v. PNC Bank, N.A.*, ___ F.3d ___, 2017 WL 490410, at *7 (8th Cir. Feb. 7, 2017) (quoting *United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995)).

Even if one were to assume Plaintiff had standing to assert this RICO claim, here the Court finds that Plaintiff fails to meet the federal pleadings standards under *Twombly* and *Iqbal*. For example, Plaintiff alleges nothing more than the unsupported assertion that Smith's involvement in racketeering activities caused Plaintiff's termination. This is

a conclusory statement that, without additional (and in this case, any) factual allegations in support, is not entitled to a *presumption of truth. Plaintiff does not allege, for example, that Smith terminated Plaintiff, or even was involved in the decision to terminate Plaintiff. He also provides nothing more than conclusory allegations that Smith committed racketeering activity, apparently in the form of an attempt to obstruct justice and witness tampering, but provides no factual predicate related to this claim.[4] And paragraphs 46 through 50, cited by Plaintiff, do no more than contend that the unspecified "intentional tampering and obstruction" violated several different statutes. As such, Count XV fails to state a claim.

## COUNT XVI—Tortious Interference with Economic Advantage

To prove a claim for tortious interference with a contract or business expectancy, a plaintiff must demonstrate: "(1) a contract or a valid business expectancy; (2) defendant's

---

[4] Indeed, although not raised by Defendant, the Court is unable to determine what "enterprise" allegedly existed. Proof of a RICO enterprise requires a plaintiff to prove "(1) a common or shared purpose that animates the individuals associated with it, (2) a formal or informal organization of the participants in which they function as a unit, including some continuity of both structure and personnel, and (3) an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity." *Aguilar*, 2017 WL 490410, at *7 n.13 (quoting *United States v. Henley*, 766 F.3d 893, 906 (8th Cir. 2014)). Plaintiff provides no basis for the existence of any of these elements, alleging nothing more than that "[t]here existed a long term pattern of racketeering activity that violated [RICO]" (Doc. No. 64, Count XII, ¶ 45, p. 24), and "Smith was part of the organization involved in RICO and was involved in the obstruction of a witness and informant and tampering with evidence." He does not allege any enterprise, much less one "distinct from that inherent in the conduct of a pattern of racketeering activity." Such allegations do not suffice to plead a RICO enterprise.

knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 602 (Mo. 2013). "[A]n action for tortious interference with a business expectancy will lie against a third party only . . . . Where the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference." *Id.* (internal citation omitted).

As stated above, Smith argues in his motion to dismiss that he acted in his capacity as an official of the City of Pine Lawn, and therefore cannot tortiously interfere with its own relationship with Plaintiff. Smith further argues that Plaintiff offers legal conclusions, which the Court need not accept. In response, Plaintiff asserts Smith acted in his own self-interest and outside the scope of his employment. Plaintiff further responds that he communicated with Smith and asked that the hostile work environment cease and that certain officials who were "acting maliciously towards [Plaintiff] stop these actions." (Doc. No. 64 at 6.)

Here, too, the Court agrees that Plaintiff has failed to plead facts sufficient to survive a motion to dismiss. Putting aside the fact that Plaintiff provides no basis for his allegation that he had an "expectance of continued employment with Pine Lawn" of which Smith allegedly had knowledge,[5] Plaintiff alleges nothing other than the bare

---

[5]    Plaintiff provides no support for his legal conclusion with respect to his expectation of continued employment. Plaintiff does not allege that he had any employment contract,

conclusion that "Smith intentionally and wrongfully interfered with Collins's economic relationship and expectancy of continued employment" by "causing Collins to be wrongfully terminated." He provides no basis for his allegation that Smith "caused" Plaintiff to be wrongfully terminated. This lack of predicate facts is especially troublesome in this case, as Plaintiff has asserted in the incorporated paragraphs that he was wrongfully terminated by the Board of Aldermen.

Plaintiff's reference to the allegations incorporated from Count I, that Smith failed to respond to reports of harassment and said he could take no action regarding Caldwell's improper conduct, have no discernable relation to the alleged tortious interference. In short, Plaintiff provides nothing other than legal conclusions, which this Court need not accept, to support his claim of tortious interference.

Moreover, as currently pleaded, Plaintiff fails to allege the necessary elements. As noted above, a claim for tortious interference with a business expectancy can be stated only against a third party. *See Farrow*, 407 S.W.3d at 602. As City Attorney and agent for Pine Lawn, Smith's actions are the same as those of Pine Lawn, and Plaintiff cannot assert a claim essentially against Pine Lawn for interference with its own contract with Plaintiff. *See id.*; *Zipper v. Health Midwest*, 978 S.W.2d 398, 419 (Mo. Ct. App. 1998) ("Where the individual being sued is an officer or agent of the defendant corporation, the

---

and provides no support for his expectation. As the court recognized in *Fields v. R.S.C.D.B., Inc.*, cited by Plaintiff, if Plaintiff was an at-will employee, he could not have a claim for tortious interference. *Fields v. R.S.C.D.B., Inc.*, 865 S.W.2d 877, 879 (Mo. Ct. App. 1993) ("Without a contract specifying the term of employment, the employment is deemed at will and hence there is no valid expectation of employment for any duration.")

officer or agent acting for the corporation is the corporation for purposes of tortious interference.").

In response, Plaintiff cites to his allegations that each of the individual Defendants is "sued in his individual unofficial capacity." But Plaintiff appears to the confuse the concept of the *capacity* in which Smith is being sued (*i.e.*, whether in his official or individual capacity, which is material when suing an employee of a public entity) with the allegations necessary to assert that Smith was acting in some capacity other than as an agent for Pine Lawn. The only *facts* asserted in Count XVI, as opposed to conclusions, are that "Smith was the city attorney for Pine Lawn and was involved with the setting of the hearings regarding personnel issues and presenting, or not presenting, evidence during the hearings." (Doc. No. 64, Count XVI, ¶ 45, p. 29.) This suggests Smith was acting as an agent for Pine Lawn in connection with whatever improper actions Plaintiff believes Smith took that interfered with Plaintiff's business expectancy. If, as Plaintiff alleges, Smith acted due to personal animosity toward Plaintiff, that may go toward lack of justification, but does not undercut the fact Smith was acting as an agent of Pine Lawn when he took those actions. *See Graham v. Hubbs Mach. & Mfg., Inc.*, 92 F. Supp. 3d 935, 944 (E.D. Mo. 2015).[6]

Plaintiff also contends that an exception to the general rule exists, and that "a co-employee" can be liable for intentional interference if the defendant "acted for his own

---

[6]    Eslsewhere, in his response to the motion to dismiss Count XIX, Plaintiff argues that "a government employee, by virtue of employment, acts on behalf of the state . . . . Even when the government employee exceeds or abuses his or her authority, such conduct remains attributable to the state . . . ." (Doc. No. 84 at 10.)

self-interest, outside the scope of their [sic] employment." (Doc. No. 84, at 7.) The cases cited by Plaintiff, however, provide scant authority for the sufficiency of his pleading. In both *Fields* and *Gill v. Farm Bureau Life Ins. Co. of Mo.*, cited by Plaintiff, the courts affirmed the dismissal of the claims against the individual defendants who were officers or agents of the corporate defendants. *See Fields*, 865 S.W.2d at 879; *Gill v. Farm Bureau Life Ins. Co. of Mo.*, 856 S.W.2d 96, 100 (Mo. Ct. App. 1993). The third case Plaintiff cites, *Preferred Physicians Mut. Mgt. Grp. v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805 (Mo. Ct. App. 1996), is distinguishable, as the plaintiff/company was suing its own shareholder, who also provided executive services to the plaintiff, for interference with a business expectancy that the plaintiff/company had. *Id.* at 812.

Even if one assumes that *Preferred Physicians* stands for the proposition that an employee or agent of the defendant entity can be sued for tortiously interfering with a contract with the defendant entity, Plaintiff's pleading still is insufficient. In *Preferred Physicians*, the plaintiff specifically alleged that the defendant not only performed services for and was a shareholder of the plaintiff company, but also had his own company and was the president and member of the board of directors of Insurance Company, the company with which the plaintiff had the business expectancy. The plaintiff there also specifically alleged that the individual defendant "switched his allegiance in search of personal prestige and financial gain, in derogation of his duties to [the plaintiff] when he, as an individual and as a principal of [his own company] deliberately, wrongfully and without justification interfered with the business expectation

12

of [the plaintiff] by inducing the board of directors of Insurance Company to unilaterally breach the service contract." *Id.*

But Plaintiff here does not allege multiple positions by Smith. The bulk of the allegations regarding Smith recite his actions and activities in his capacity as City Attorney – an agent for Pine Lawn. Plaintiff's mere conclusions, in the latter part of Count XVI, that Smith "in his individual and unofficial capacity" wrongfully interfered with the expectancy of his employment with Pine Lawn, simply are not sufficient. Plaintiff identifies no actions – as opposed to conclusions – that Smith is alleged to have taken other than in his capacity as City Attorney. His bare allegations that Smith acted "for his own personal interests" and that he "used improper means to further his own interests" are conclusions, and do not suffice. *See Schott v. Beussink*, 950 S.W.2d 621, 628–29 (Mo. Ct. App. 1997) (holding that merely stating that "all of said actions being without justification or excuse" is insufficient as it is "conclusionary in nature and is not supported by factual allegations."). Plaintiff simply provides no factual basis, whatsoever, for this Court to find a "plausible" claim that Smith's actions, even if improper and intentional, were not performed in his capacity as City Attorney and an agent for Pine Lawn. As such, Count XVI as pleaded fails to state a claim. *See Graham*, 92 F. Supp. 3d at 944.

## Count XIX—Claims Under § 1983

Smith next moves for dismissal of Plaintiff's constitutional claims. Generally, Smith asserts that he is shielded from these claims under the doctrine of qualified

immunity, and that Plaintiff has failed to state a claim under each constitutional provision at issue.

As stated above, Plaintiff alleges multiple violations of his constitutional rights by Smith. Specifically, Plaintiffs asserts that his right to free speech and right to freedom of association under the First Amendment, and right to due process and equal protection under the Fourteenth Amendment have been violated.

"In a § 1983 action, qualified immunity shields a government official from liability unless his conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Nord v. Walsh Cty.*, 757 F.3d 734, 738 (8th Cir. 2014) (citation omitted). "Qualified immunity analysis requires a two-step inquiry: '(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct.'" *Id.* (quoting *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012)). "Qualified immunity is an affirmative defense, to be upheld in a motion to dismiss only when the immunity can be established on the face of the complaint." *Bradford v. Huckabee*, 330 F.3d 1038, 1041 (8th Cir. 2003); *see also Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (citation omitted).

**First Amendment Claim**

Smith moves for dismissal of Plaintiff's First Amendment claim, arguing that Plaintiff has not alleged a prima facie case for First Amendment retaliation. More specifically, Smith contends that Plaintiff has not pleaded facts that show that Smith took

an adverse employment action against him, or that causality exists between Plaintiff's alleged protected conduct and his termination.

To establish a First Amendment retaliation claim, a plaintiff must allege that: "(1) he engaged in activity protected by the First Amendment; (2) the defendants took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action." *Lyons v. Vaught*, 781 F.3d 958, 961 (8th Cir. 2015).

Here, Plaintiff alleges that adverse action was taken against him, and alleges that he talked to the press, FBI, and "elected officials" about many of the allegations of misconduct by the mayor. (Doc. 64, at 34, ¶ 45.) Assuming those allegations are sufficient, his claim still fails against this particular Defendant, because Plaintiff does not sufficiently allege that Smith took any action against him. Plaintiff asserts that he talked to the press about Caldwell's activities, that these reports resulted in a hostile work environment, he communicated this to Smith, and Smith gave no response to Plaintiff. Plaintiff further asserts that when he told Smith and Krueger about the mayor's improper activities, Smith said he could not do anything. But, as set forth above, Plaintiff nowhere alleges that Smith participated in the decision to terminate him. To the contrary, he alleges that the Board of Aldermen terminated his employment. Stating that Smith "caused" Plaintiff to be terminated is not enough. *See Iqbal*, 556 U.S. at 676 (noting that a plaintiff asserting a First Amendment claim "must plead that each Government-official defendant, through his own individual actions, has violated the Constitution.") Plaintiff's complaint is devoid of allegations of conduct that Smith undertook that would allow the

Court to draw a fair inference of the plausibility of Plaintiff's claim. Thus, Plaintiff's First Amendment retaliation claim fails.

**Procedural Due Process Claim**

Smith next asserts that Plaintiff's due process claims under the Fourteenth Amendment fail as a matter of law because Plaintiff does not have a protected property interest in his continued employment. Plaintiff does not respond to this argument.

In the Complaint, Plaintiff alleges that his constitutional due process rights were violated by the failure to provide required process before he was disciplined or terminated. He alleges that he had a property interest and an expectancy of continued employment under Missouri Revised Statutes § 84.120, and that "there existed a statute, ordinance and operations manual that required just cause for discipline." (Doc. No. 64, at 34-35, ¶¶ 51, 53, & 57.) He further contends that his constitutional protected liberty interests were violated, in that the circumstances of his discharge seriously damaged his reputation and ability to obtain employment and that "false and stigmatizing statements were made in connection with the employee's discharge in public, without a meaningful opportunity for Collins to clear his name." (Doc. No. 64, at 35, ¶¶ 58-59, 61-62.)

To prevail on his procedural due process claim under § 1983, Plaintiff must establish that he was entitled to constitutionally protected property or liberty interest. *See Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011); *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999). In this circuit, an at-will employee generally has no protected liberty interest in continued employment. *See Speer v. City of Wynne, Ark.*, 276 F.3d 980, 984 (8th Cir. 2002). As such, at-will employees are entitled to a hearing in

connection with their discharge only "where a state employer creates and disseminates a false and defamatory impression about the at-will employee in connection with the discharge." *Id.*

> To establish a procedural due process claim against a state employer for deprivation of a protected liberty interest in a public employee's reputation, [a plaintiff] must demonstrate: (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alternation or extinguishment of a right or legal status.

*Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009) (citations omitted). In addition, the plaintiff must prove he requested and was denied a name-clearing hearing. *Id.*

To establish a constitutionally protected deprivation of property, Plaintiff must show that he had a property right in continued employment. *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1089 (8th Cir. 2014). Plaintiff alleges this right arises by state statute, citing Mo. Rev. Stat. § 84.120, and also by ordinance and an operations manual requiring just cause for discipline. But as Smith correctly notes, the statute Plaintiff cites has no application, as Chapter 84 applies only to St. Louis and Kansas City, and § 84.120 applies only to St. Louis, as a city with a population of 500,000 or more. As Plaintiff himself acknowledges in the Complaint, Pine Law is a Fourth Class City.

Chapter 79 applies to Fourth Class Cities. The pertinent statute, Mo. Rev. Stat. § 79.240,[7] makes clear that appointed employees, like Plaintiff, are at-will employees.

---

[7]    Mo. Rev. Stat. § 79.240 in pertinent part provides:

> The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such

*Isaiah v. City of Pine Lawn*, No. 4:12CV230 HEA, 2015 WL 417581, at *3 (E.D. Mo. Feb. 2, 2015) ("[B]ecause Pine Lawn is a fourth-class city and Plaintiffs [who were police officers] were appointive officers, Plaintiffs were at-will employees under Missouri who could be terminated for 'no reason or any reason,' and thus did not have a property interest in their continued employment implicating procedural due process requirements."); *see also Margiotta v. Christian Hosp. Ne. Nw.*, 315 S.W.3d 342, 345-46 (Mo. 2010). Thus, Plaintiff has no constitutionally protectable property right created by state law. *See Crews*, 771 F.3d at 1090. Nor do operations manuals and handbooks create such a right in derogation of the statute. *Id.* at 1091. And Plaintiff identifies no ordinance that creates any such right. The right not to be discharged in violation of Missouri public policy against discharging employees for whistleblowing "is not a property interest for procedural due process purposes." *Bennett v. Watters*, 260 F.3d 925, 929 (8th Cir. 2001). As such, Plaintiff has not and cannot establish he had a due process property right.

In addition, the Court does not accept as true Plaintiff's threadbare legal conclusion that Plaintiff "was denied his constitutional right of due process by Smith, as provided to him by the United States Constitution." (Doc. No. 64 at 35.) As with his other claims, Plaintiff has not pleaded sufficient factual allegations which would allow the Court to draw the reasonable inference that Smith is liable for the alleged misconduct.

appointive officer may be removed by a two-thirds vote of all the member elected to the board of aldermen, independently of the mayor's approval or recommendation. The board of aldermen may pass ordinances regulating the manner of impeachments and removals.

*See Iqbal*, 556 U.S. at 678.  In fact, as already discussed, Plaintiff has not pleaded any facts that would suggest Smith was involved in any capacity in Plaintiff's termination. For example, Plaintiff simply alleges that he "was terminated from [Pine Lawn] without ever being informed of reasons for his termination."  (Doc. No. 64 at 7.)  Plaintiff alleges that members of the city's Board of Alderman suspended him, purportedly discussed his employment in covert meetings, and terminated him.  Plaintiff, however, does not allege any actions by Smith in that regard.  In fact, Smith is generally not mentioned in the factual allegations regarding this Count, except for the generalized contention that "Smith was a willful participant in joint actions of other government agents in denying Collins his constitutional rights," and that "[t]he violation of Collins's aforementioned right were caused by Smith and his actions violated 42 U.S.C. §1983."  *Id.* at p. 36, ¶¶ 63 & 64. Without more, the Court has no basis to conclude that Plaintiff has stated a plausible claim against Smith.

For similar reasons, the Court finds that any claim Plaintiff asserts against Smith of a purported violation of his liberty interest also fails.  Plaintiff pleads no facts indicating that Smith made false and stigmatizing statements in connection with Plaintiff's termination.  Nor does he provide any basis for the Court to determine that the alleged statements may be of the significant type required to support a liberty interest claim.  *See Crews*, 771 F.3d at 1092.  Plaintiff's pleadings simply parrot the elements of a deprivation of liberty interest claim, and it is well settled that a "formulaic recitation of the elements of a cause of action" do not suffice under the heightened pleading standards under *Twombly* and *Iqbal*.  *See Iqbal*, 556 U.S. at 678.  Additionally with respect to the

name-clearing hearing, Plaintiff alleges in Count I, paragraph 25 that he "was never allowed an appeal hearing" and in Count XIX, paragraph 62, that false and stigmatizing statements were made "without a meaningful opportunity for Collins to clear his name." But Plaintiff nowhere alleges, as he must, that he in fact requested a name-clearing hearing. *See Crews*, 771 F.3d at 1092. As such, Plaintiff's liberty due process claim fails for this reason as well.

**Equal Protection Claim**

"The Equal Protection Clause requires that the government treat such similarly situated persons alike." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (citations omitted). "Absent evidence of direct discrimination, courts apply the *McDonnell Douglas* burden-shifting analysis to claims of employment discrimination under the Equal Protection Clause. *Id.* (citing *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1010 (8th Cir. 2003) (en banc)). Under this analysis, "a prima facie case of discrimination requires that a plaintiff prove: '(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.'" *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

Smith cites *Hager* in support of his assertion that Plaintiff's equal protection claim is conclusory and is insufficient to state a § 1983 claim under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff does not respond to Smith's arguments; rather, he asserts that the entire complaint is sufficient under federal pleadings standards

provided in Federal Rule of Civil Procedure 8. The cases on which Plaintiff relies, however, were decided prior to *Iqbal*, which redefined what is required to state a claim.

Plaintiff's equal protection claim also fails because he has not pleaded any factual allegations that Smith's actions were responsible for his termination. Nor does he identify what protected class he was in; what individuals or groups of individuals, similarly situated to him, were treated differently; or how the treatment was different. Plaintiff makes one only conclusory statement regarding Smith's alleged violation: "[Plaintiff] was denied equal protection by Smith, which was his constitutional right as provided to him by the United State Constitution, Amendment XIV." (Doc. 64 at 35.) But this unsupported conclusion that he was denied equal protection by Smith is simply insufficient.

In *Hager*, the plaintiff made two conclusory allegations of gender discrimination, and did not allege any gender-related comments or conduct before her termination. The plaintiff in *Hager* also did not allege facts showing that similarly situated employees were treated differently. The Eighth Circuit held that Hager's conclusory allegations failed to give fair notice of her claim and the ground on which it rested. *Hager*, 735 F.3d at 1015. As in *Hager,* the Court finds the allegations of Plaintiff's equal protection claim also to be insufficient. Under *Hager*, given the inadequacy of Plaintiff's pleading, Smith is entitled to qualified immunity on Plaintiff's § 1983 claims.

## CONCLUSION

In sum, some of Plaintiff's claims against Defendant Smith fail for lack of standing or failure to allege necessary elements. The fundamental defect throughout

Plaintiff's claims, however, is that they consist of mere conclusions, without any factual predicate that would allow this Court to determine that Plaintiff has a plausible claim against this Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Donnell Smith's motion to dismiss is **GRANTED**. (Doc. No. 71.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of March, 2017.